**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| John E. Barber, et. al., | ) | No. CV-08-1896-PHX-DGC |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Modavox, Inc., et al., | ) | |
| Defendant. | ) | |

Defendant Robert Arkin has filed a motion to dismiss all claims against him. Dkt. #16. Plaintiffs have filed a response in opposition. Dkt. #19. Defendant has not filed a reply and the time for doing so has passed. The Court will deny the motion.

**I.  Background.**

Defendant Modavox is an internet communication company that specializes in the production and distribution of audio-video products streamed over the Internet. Dkt #1 ¶ 11. Modavox has not been profitable to date, and has issued common stock to raise capital to continue its operations. *Id.* ¶ 12. Modavox's stock is thinly traded and the price is volatile. *Id.* ¶¶ 13-15.

Defendant Robert D. Arkin served as Modavox's Chief Executive Officer, Chief Financial Officer, Chairman of the Board of Directors, and Chief Legal Officer for different periods throughout much of the time from 2001 to 2006. *Id.* ¶ 16. Plaintiffs allege that on

May 3, 2005, Arkin caused Modavox to issue 3,000,000 shares to himself, 1,500,000 shares to the then-president of Modavox, and 1,000,000 shares to a third person in order to defeat an attempt by other shareholders to take control of the business and remove Arkin. *Id.* ¶ 17. According to Plaintiffs, Arkin excluded Modavox's independent directors and shareholders from deliberations or withheld the true purpose of the issuance of shares from them. *Id.* ¶ 18. After withstanding the effort to remove him, Arkin caused Modavox to cancel the 3,000,000 shares and replace them with stock options. *Id.* ¶ 19. Arkin and Modavox then entered into a nonqualified stock option agreement which granted Arkin a ten year period to purchase 3,000,000 shares at $.25 per share, $.17 lower that the per share trading price. *Id.* ¶ 20. Plaintiffs allege that Arkin did not provide any consideration to Modavox for the agreement and that neither Arkin nor Modavox properly executed the agreement. *Id.* ¶ 21.

In February of 2006, Modavox merged with Kino Interactive, L.L.C. and Arkin resigned from all positions with Modavox. *Id.* ¶¶ 22-24. On March 22, 2006, Arkin, Modavox, Kino, and KinoCom entered into a settlement agreement and general release. *Id.* ¶ 25. The release provided that the shares under the stock option agreement were to be registered in Arkin's name within ten days and also granted Arkin an additional stock option for 450,000 shares at $.55 per share. *Id.* ¶¶ 26, 28. The release also released Arkin from all claims, demands, or causes of action arising out of acts, events, or omissions that occurred prior to the execution of the release, and Modavox, Kino, and KinoCom agreed not to sue Arkin on any claim that was released. *Id.* ¶ 27.

On July 18, 2007, Arkin attempted to acquire 50,000 shares under the stock option agreement, but Modavox denied his request because Arkin would not pay Modavox the amount of withholding taxes payable by Modavox to the IRS. *Id.* ¶ 30. On September 4, 2007, Arkin filed a claim against Modavox with the American Arbitration Association to enforce the stock option agreement. *Id.* ¶ 31. On September 10, 2007, Arkin assigned to Beryl Zyskind the right to acquire 1,200,000 shares under the stock option agreement. *Id.* ¶ 32. On September 25, 2007, Zyskind attempted to exercise the stock option for the full 1,200,000 shares, but Modavox rejected his request. *Id.* ¶ 34. On March 21, 2008, Zyskind

1 filed a claim against Modavox with the American Arbitration Association. *Id.* ¶ 35. 2 Plaintiffs allege that the assignment was a sham to avoid tax liabilities and not a valid 3 transfer for value. *Id.* ¶ 36. Both arbitrations are ongoing. *Id.* ¶ 37.

4 On July 11, 2008, Modavox disclosed in its Form 10Q filing with the SEC that it had 5 engaged an independent law firm to serve as Special Counsel to investigate possible 6 violations of law and that the Special Counsel's preliminary findings included possible 7 violations of federal securities and tax laws. *Id.* ¶ 39. The Form 10Q also disclosed the 8 ongoing arbitrations. *Id.* ¶ 40. Plaintiffs subsequently learned from Modavox that its internal 9 investigation of Arkin focused on Arkin's issuance of 3,000,000 shares to himself, Arkin's 10 issuance of 700,000 shares to a consultant who never provided services to Modavox, and 11 Arkin's issuance of shares pursuant to S-8 registration statements to raise operating capital 12 for Modavox. *Id.* ¶ 44. Modavox also claimed that it found numerous other violations 13 including evidence that Arkin diverted funds for personal use, falsely certified certain shares 14 of stock as employee compensation, misused proceeds from stock issuance, entered into 15 securities transactions with convicted felons, failed to maintain a system of internal controls 16 for Modavox's financial operations, and failed to maintain essential records. *Id.* ¶¶ 45-47.

17 On October 16, 2008, Plaintiffs filed a complaint against Modavox and Arkin alleging 18 violation of section 10(b) of the Securities Exchange Act and Rule 10b-5, violation of 19 A.R.S. § 44-1991(A), breach of fiduciary duty, ultra vires acts, corporate waste, unjust 20 enrichment, and requesting a declaratory judgment. *Id.* Plaintiffs are all shareholders of 21 Modavox and have owned stock since 2004-2005. *Id.* ¶¶ 1-6.

22 **II.    Legal Standard.**

23 When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll 24 allegations of material fact are taken as true and construed in the light most favorable to the 25 non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). "To avoid a Rule 26 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must 27 plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v.* 28 *DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v.*

*Twombly*, 127 S. Ct. 1955, 1974 (2007)).  The court may not assume that the plaintiff can prove facts different from those alleged in the complaint.  *See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005).  Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

**III.     Count I - Violation of § 10(b) of the Securities Exchange Act and Rule 10b-5.**

Arkin asserts that Plaintiffs have failed to state a claim because the Supreme Court decision in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730 (1975), established that nonderivative private civil remedies available to individual shareholders pursuant to section 10(b) and Rule 10b-5 are strictly limited to actual purchasers and sellers.  Dkt. #7 at 7.  Arkin argues that Plaintiffs' fail to allege that any of them purchased or sold stock during or after the alleged wrongdoing.  *Id.* at 8-9.  Arkin further claims that Plaintiffs' request for injunctive relief must be dismissed because a private right of action under section 10(b) and Rule 10b-5 limits recovery to actual damages.  *Id.* at 9.

Plaintiffs respond that the "purchaser-seller rule" only applies to monetary damages, not injunctive relief.  Dkt. #19 at 6.  Plaintiffs also allege that they were purchasers and sellers of Modavox stock during the relevant time periods and request the opportunity to amend their Complaint if the Court applies the purchaser-seller requirement to actions for injunctive relief.  *Id.* at 7.  Defendant has not replied to Plaintiffs' arguments.

Plaintiffs may seek injunctive relief in a direct claim pursuant to section 10(b) and Rule 10b-5.  *Burman v. Phoenix Worldwide Industries, Inc.*, 384 F. Supp. 2d 316, 341 (D. D.C. 2005) (citing *Dabit v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 395 F.3d 25, 32 (2d Cir. 2005)).  The Ninth Circuit has never addressed whether the purchaser-seller rule applies to a claim for injunctive relief.  Other Circuits are split on this issue.  The Second and Third Circuits have found that there is an exception to the purchaser-seller rule where injunctive relief is sought, while the Eighth and D.C. Circuits hold that no such exception exists.

1 *Compare Kahan v. Rosenstiel*, 424 F.2d 161 (3d. Cir. 1970), *and United States v. Newman*, 2 664 F.2d 12 (2d. Cir. 1981), *with Cowin v. Bresler*, 741 F.2d 410 (D.C. Cir. 1984), *and* 3 *Greater Iowa Corp v. McLendon*, 378 F.2d 783 (8th Cir. 1967). The Court need not reach 4 this issue, however, because Plaintiffs state that they were in fact purchasers and sellers of 5 Modavox stock during the relevant time periods and seek leave to amend the Complaint. 6 Dkt. #19 at 8. The Court will grant leave to amend the Complaint to address this issue. 7 Plaintiffs shall submit an amended complaint by January 9, 2009.

8 **IV.  Count II - Violation of A.R.S. § 44-1991(A).**

9 Arkin similarly argues that Plaintiffs' claim for violation of A.R.S. § 44-191(A) must 10 be dismissed because only a purchaser or seller may bring an action for rescission or 11 damages. Dkt. #16 at 9. Plaintiffs argue that Arizona courts have never explicitly adopted 12 a purchaser-seller rule for the Arizona Securities Act. Dkt. #19 at 9. Because the Court is 13 granting Plaintiffs leave to amend the Complaint to add a purchaser-seller allegation, it need 14 not resolve this issue.

15 **V.  Count III - Breach of fiduciary duty.**

16 Defendant asserts that Plaintiffs must bring a derivative claim for breach of fiduciary 17 duty pursuant to Federal Rule of Civil Procedure 23.1, rather than a private action against 18 Arkin. Dkt. #16 at 10. Defendant cites no legal authority for this proposition. Plaintiffs 19 argue that they may bring a direct action against Arkin because the claim for breach of 20 fiduciary duty is premised on the dilution of their voting power and control. Dkt. #19 at 9. 21 Defendant has not replied to Plaintiffs' arguments.

22 "Claims of decreased voting power have been held to state independent rather than 23 derivative claims for relief." *Albers v. Edelson Tech. Parners L.P.*, 31 P.3d 821, 826 (Ariz. 24 Ct. App. 2001) (citing *In re Tri-Star Pictures, Inc., Litig.*, 634 A.2d 319, 330 (Del. 1993)); 25 *see also Gentile v. Rossette*, 906 A.2d 91, 101-03 (Del. 2006). Plaintiffs' claim that the 26 breach of fiduciary duty resulted in decreased voting power is a direct claim and will not be 27 dismissed.

28 / / /

- 5 -

### VI. Count IV - Ultra vires acts.

Defendant contends that Plaintiffs' claim for ultra vires acts, pled pursuant to A.R.S. § 10-304(B)(1), must be dismissed because Modavox is a Delaware corporation not subject to the Arizona statute. Dkt. #16 at 10. Plaintiffs argue that the ultra vires cause of action is not pled as a statutory action and, in any event, that Delaware law provides the same remedy. Dkt. #19 at 11-12. Defendant has not replied to Plaintiffs' arguments. As the Court has granted leave for the Plaintiffs to submit an amended complaint, Plaintiffs may also clarify the authority under which they assert this claim. The Court cannot conclude at this stage that Plaintiffs are unable to prove a set of facts that would entitle them to relief under the appropriate law.

### VII. Counts V, VI, and VII.

Defendant asserts that Plaintiffs' claims for corporate waste, unjust enrichment, and declaration of invalidity cannot be pled as direct claims because Plaintiffs have not asserted any special damages. Dkt. #16 at 10-11. Defendant again fails to cite legal authority. Plaintiffs argue that these claims are properly pled as direct causes of action because they arise from the dilution of their voting power and control. Dkt. #19 at 12 (citing *Gentile*, 906 A.2d at 100). Defendant has not replied to Plaintiffs' arguments, and this Court will not make Defendant's arguments for him. The Court cannot conclude at this stage that Plaintiffs' claims are invalid on their face. The Court will deny the motion to dismiss.

**IT IS ORDERED** that Defendant Arkin's motion to dismiss (Dkt. #16) is **denied**.

DATED this 18th day of December, 2008.

_David G. Campbell_
United States District Judge